Saul S. Street, J.
Pursuant to article 78 of the CPLR, petitioner, the District Attorney of New York County, seeks to enjoin and prohibit the respondent Judge and Judges of the Criminal Court of the City of New York from conducting a jury trial in the criminal cases now pending in such court against respondents Bowman and Puryear.
It appears from the papers before the court that on April 10, 1968, Bowman and Puryear, 18 and 19 years old, respectively, were arrested and arraigned in Criminal Court on charges of possession of burglar’s tools (Penal Law, § 140.35), a Class A misdemeanor, and criminal trespass in the third degree (Penal Law, § 140.05), a violation. After a preliminary hearing was held before Hon. Jack Rosenberg, a named respondent herein, a motion by the prosecution to add the charge of criminal trespass in the first degree (Penal Law, § 140.15), another Class A misdemeanor, was granted.
Thereafter, on September 9, 1968, Judge Rosenberg granted Bowman’s and Puryear’s motion for a jury trial, citing the recent decision of the United States Supreme Court in Duncan v. Louisiana (391 U. S. 145), as mandating such ruling. Petitioner now argues, however, that the determination of Judge Rosenberg is contrary to law. He notes that section 40 of the New York City Criminal Court Act, which governs the pending proceedings against Bowman and Puryear in the Criminal Court, expressly precludes a trial by jury. He further asserts there is no authority for the Criminal Court of the City of New York to conduct a jury trial on any issue (citing N. Y. City Crim. Ct. Act, § 33).
*587 Prior to discussing the substantive merits of the arguments advanced by the respective parties here involved, it is first necessary to dispose of various procedural issues raised by them. Respondents Bowman and Puryear contend, in substance, that the District Attorney may not avail himself of the relief afforded by an article 78 proceeding (in the nature of a writ of prohibition). I do not agree, for it is well-settled law that an article 78 review is the appropriate means to prevent a court from usurping, exceeding or abusing its authorized powers and jurisdiction (see Matter of Murtagh v. Leibowitz, 303 N. Y. 311; Matter of Hogan v. Court of General Sessions, 296 N. Y. 1, 8; Matter of United States of Mexico v. Schmuck, 294 N. Y. 265, 274; Matter of City of New York v. Maltbie, 248 App. Div. 36, 38, affd. 274 N. Y. 464). Moreover, it is significant and fundamental that if a jury trial were held, as ordered by Judge Rosenberg (supra), neither petitioner nor the People of the State of New York whom he represents, could appeal from the resulting judgment. Similarly, an appeal does not lie from Judge Rosenberg’s order itself. Thus, the remedy sought herein is particularly appropriate when it is obvious that no other legal procedure is available to petitioner to prevent what, in his opinion, is an abuse of power (Matter of Hogan v. Court of General Sessions, supra, p. 9).
Petitioner and the Attorney-General of the State of New York, as petitioner-intervenor, stress the fact that New York law which denies a jury trial for Class A misdemeanors has previously been held to be constitutional (citing People v. De Cillis, 14 N Y 2d 203 [1964], and People v. McConner, N. Y. L. J., Dec. 11, 1968, p. 16, col. 8 [App. Term, 2d Jud. Dist.]; see, also, People v. Kaminsky, 208 N. Y. 389). They urge, therefore, that a decision, as a matter of judicial policy, to apply the doctrine of the Duncan case so as to require trial by jury in the respondent court, should be made by the Court of Appeals of this State rather than here at a lower trial level.
I recognize the validity of the reasoning behind such argument and while I am also aware of a similar admonition by the Court of Appeals (see People v. Reed, 276 N. Y. 5), nevertheless, the very nature of the application by petitioner compels this court, at nisi prius, to determine all of the issues raised by the pleadings in light of the present and controlling law, including those which may, directly or indirectly, affect the constitutionality of various provisions of our criminal laws. While I may be constrained to strike down a statute heretofore held to be constitutional by the Court of Appeals of this State, nevertheless, if a determination of the highest judicial tribunal of *588 the country, the Supreme Court of the United States, clearly mandates such result, it would leave me no alternative.
In this respect, I am mindful that the underlying problem of distinguishing between ‘ ‘ serious ’ ’ and ‘ ‘ petty ’ ’ crimes, undoubtedly, would be best resolved in the legislative arena rather than by judicial fiat. However, as succinctly stated by Mr. Justice White in Duncan (supra, p. 160): “In the absence of an explicit constitutional provision, the definitional task necessarily falls on the courts, which must either pass upon the validity of legislative attempts to identify those petty offenses which are exempt from jury trial or, where the legislature has not addressed itself to the problem, themselves face the question in the first instance ”. (Emphasis added.)
Thus, inasmuch as the Legislature of this State has not spoken since the recent edict of the United States Supreme Court in Duncan (supra) and in the companion case of Bloom v. Illinois (391 U. S. 194), decided on the same day (May 20, 1968), I deem it encumbent upon this court, at this time, to pass upon the critical constitutional issue raised by the instant application, particularly where, as here, these controlling decisions compel the result arrived at herein (infra).
As will hereinafter be discussed in detail, Bowman and Puryear contend that they both face the possibility of lengthy reformatory sentences, pursuant to the provisions of article 75 of the Penal Law. Petitioner-intervenor asserts that such issue is raised prematurely here. The Attorney-General argues that this “ reformatory sentence ” article of the Penal Law (§ 75.00 et seq.) only becomes a justiciable issue after it has actually been utilized by the sentencing Judge.
I would be in complete accord with such contention had it been the respondents (Bowman and Puryear) who instituted this proceeding prior to sentencing (see United States v. Miller, 249 F. Supp. 59, [U. S. Dist. Ct., S. D. N. Y., 1965]). However, the pending application was commenced by the District Attorney and, as above indicated, the very nature of his proceeding, coupled with the recent judicial determinations of the highest court of our country (supra), mandates consideration of the reformatory sentence issue (art. 75) at this posture of the criminal proceedings against Bowman and Puryear rather than after their possible conviction and a review thereof in an appellate court.
Furthermore, in my opinion, it would not be a proper exercise of judicial responsibility for this court to permit the pending criminal trial to proceed, particularly in light of Duncan, without advising the sentencing court below whether the punishment it may wish to prescribe (in the event Bowman and Puryear are *589 convicted) is constitutionally proper. Thus, in view of the prohibition sought here by petitioner and the constitutional issues raised by this proceeding, no valid reason has been set forth by him or the petitioner-intervenor which warrants any delay by this court in the determination of respondents ’ correlative rights, as framed by the pleadings of the respective parties.
Regarding the substantive issues here involved, it is noteworthy that the problem as to what constitutes a “ serious ” crime, requiring a jury trial, or a “ petty” crime or offense, which can be tried by a court alone, is not a novel or recent one. So-called “ petty ” offenses were tried without juries both in England and in the Colonies and have always been held to be exempt from the otherwise comprehensive language of the •United States Constitution’s jury trial provisions (U. S. Const., 6th Amdt.; see “ Appendix A, New York Colonial and State Legislation Concerning Summary Disposition of Petty Offenses ”, Felix Frankfurter and Thomas G. Corcoran, 39 Harv. L. Rev. 917, 983 et seq.). In view of the many publicized cases in this State and throughout the Nation which have discussed the history and background of this issue, culminating in the recent Duncan and Bloom decisions of the United States Supreme Court (supra), it would serve no useful purpose to set forth here in detail the long legislative history and continued judicial efforts in the State of New York to catalog and classify the various crimes, offenses and violations as they now appear in the newly revised Penal Law. Suffice it to note that in the past, New York’s limitations on the right to a jury trial have been drawn, essentially, from its colonial history rather than any express language set forth in its own State Constitution (see Frankfurter and Corcoran, supra, pp. 948-949).
Thus, in contrast with the Puritan Colonies, New York relied most heavily for its law enforcement upon the summary powers of its Magistrates. Subsequent legislation dealing with specific crimes and offenses continually added to the volume of punitive laws committed to the jurisdiction of Magistrates. Far from any repeal of these colonial laws which conferred summary powers upon the Magistrates, the adoption of the State Constitution of 1777 and later legislative enactments vigorously utilized these powers of the Magistrate by submitting to the jurisdiction of his tribunal crimes which carried increased penalties and more severe sanctions upon conviction by the court alone. The possible consequences to defendants from convictions by the court for “ petty ” offenses have always been thought insufficient to outweigh the benefits to efficient law enforcement and simplified judicial administration which results from the availability
*590 of speedy and inexpensive nonjury adjudications. This history and purpose have always controlled and guided the courts of this State in resolving the scope and nature of criminal cases which require the constitutionally guaranteed trial by jury (see N. Y. Const., art. I, §§ 2, 6; art. VI, § 15; § 18, subd. a; see, also, Murphy v. People, 2 Cow. [N. Y.] 815; Jackson v. Wood, 2 Cow. [N. Y.] 819; Frankfurter and Corcoran, supra, p. 947). It must now be determined whether in light of Duncan and Bloom (supra), New York can still adhere to its own historical standards and method of cataloging crimes or must it now review and perhaps alter its existing classifications of “ petty ” and “ serious ” crimes to accord with the newly enunciated Federal standards.
I find that the effect of the United States Supreme Court decision in Duncan v. Louisiana regarding the right to a jury trial is twofold. Initially, it makes applicable to the States the Sixth Amendment of the United States Constitution which provides for a jury trial by incorporating this requirement within the ambit and scope of the Fourteenth Amendment. Before Duncan, the Sixth Amendment’s jury trial mandate was held not to be applicable to the several States (see, Fay v. New York, 332 U. S. 261; Palko v. Connecticut, 302 U. S. 319). Likewise, despite Federal and State constitutional provisions for trial by jury, as above indicated, there has always existed in this country the right to try “petty ” offenses without the benefit of jury trial (see United States v. Barnett, 376 U. S. 681, 750 ; People v. Kaminsky, supra). However, the guidelines in the Federal and State courts as to what constituted a petty offense differed widely in the various jurisdictions.
More important, perhaps, than the application of the Sixth Amendment to the States is the fact that the Supreme Court of the United States, by way of Duncan (and the Bloom decision) (supra), has now begun to impose Federal standards on the several States as to what constitutes a “ petty ” crime and a “ serious ” crime. While the court, in Duncan, conceded that the process of drawing a line in the spectrum of crime separating “ petty ” from “ serious ” infractions cannot be wholly satisfactory, it was nevertheless necessary to do so, inasmuch as it considered the right to a jury trial for a serious crime a ‘ ‘ fundamental right * * * basic in our system of jurisprudence ” (supra, p. 149).
A brief factual synopsis of Duncan is relevant here. In this case, defendant, after a trial without a jury, received a sentence of 60 days for simple battery. The punishment prescribed therefor by Louisiana law authorized a sentence of up to two years. *591 The United States Supreme Court held that a crime punishable by two years’ imprisonment was a “ serious ” crime which required a trial by jury. The mere fact that defendant received only 60 days did not, the court stated, alter the crime to a “ petty ” offense.
At the same time, Duncan also reaffirmed the Supreme Court’s position in Cheff v. Schnackenberg (384 U. S. 373), to the effect that crimes punishable by six months’ imprisonment do not require a jury trial if they otherwise qualify as petty offenses. It also reiterated the enunciation first set forth in District of Columbia v. Clawans (300 U. S. 617, 625) that it is the severity of the authorised punishment rather than the actual punishment meted out which is indicative of the seriousness of the crime involved (see also, Bloom v. Illinois, supra).
Despite respondents’ assertions, in no way can Du/ncan be reasonably interpreted as ruling that six months is the maximum sentence permissible in nonjury cases. On the contrary, the court, taking specific notice of New York law in its accompanying footnote 33, stated at page 161: “In 49 of the 50 States crimes subject to trial without a jury, which occasionally include simple battery, are punishable by no more than one year in jail ” (emphasis added).
Moreover, in a third case (decided at the same time as Duncan and Bloom), the Supreme Court specifically noted it had not had occasion to state “ precisely where the line falls between punishments that can be considered ‘ petty ’ and those that cannot be ” (Dyke v. Taylor Implement Co., 391 U. S. 216, 220).
At most, therefore, Duncan has established the guideline that crimes punishable by no more than six months in prison do not require a jury trial, while those defendants facing punishment of two years in jail would be, if convicted, guilty of a “ serious ” crime and thus entitled to the constitutional guarantee of a trial hy jury. There still remains, however, the unresolved hiatus between the six months’ and two-year punishments. The nature of those crimes which fall within the still existing void must, therefore, be resolved either by legislative pronouncement or, as here, by judicial edict. Thus, it is now necessary to examine the potential sentence which may be imposed upon respondents Bowman and Puryear in order to ascertain whether such punishment dictates the right to the jury trial heretofore ordered by respondent Judge Rosenberg.
Possession of burglar’s tools and criminal trespass in the first degree, as above stated, are Class A misdemeanors ordinarily punishable by up to one year in prison, a maximum fine of $1,000 or both (Penal Law, § 60.10, subd. 2, par. [d]; § 70.15, subd. 1; *592 § 80.05, subd. 1). Criminal trespass, a violation, is punishable by up to 15 days in prison, a maximum fine of $250 or both (Penal Law, § 60.10, subd. 2, par. [d]; § 70.15, subd. 4; § 80.05, subd. 4). Where more than one such charge arises from the same incident, the maximum penalty would be one year. (Penal Law, § 70.25, subd. 3.)

Inasmuch as Neiv York only dispenses with jury trials in misdemeanor offenses which were not indictable offenses at common law, this court is in full accord ivith the position advocated by petitioner-intervenor that offenses punishable by incarceration of no more than one year are not “ serious ” crimes requiring a trial by jury.

To hold otherwise would, indeed, result in a Pyrrhic victory for most defendants in New York City. The basic reason for dispensing with jury trials, even at common law, as heretofore indicated, was the desire for a swift and convenient remedy. This reason continues to be cogent and convincing today and, as urged by the two petitioners, is beneficial to defendants and the People alike. A wide variety of offenses carrying relatively minor penalties must be tried and disposed of quickly in order to protect an innocent defendant from having a criminal charge pending against him for a period of time longer than that for which he could be imprisoned if he were found guilty. As noted by the Attorney-General of the State of New York in his brief to the United States Supreme Court amicus curice in the Duncan case (p. 7): “ This is particularly necessary for a defendant who is held on bail and could be severely prejudiced by having to wait many months for his case to take its place on an already congested jury trial calendar. The necessity for providing speedy disposition of minor offenses is equally apparent from the State’s point of view. The volume of cases handled by the New York City Criminal Court is tremendous and the strain on the judicial system of convening a common law jury [or even a petit jury] for each minor offense is obvious ”.
A footnote to this quotation indicates that in 1964, a representative year, there were over three million arraignments and more than two million convictions in the New York City Criminal Court. Three-Judge panels tried 11,678 cases to conclusion, resulting in 7,136 convictions.
This congested calendar -condition, the attendant lengthy delay and the desire, wherever possible, for a speedy trial and prompt disposition in a “ petty” criminal matter were, as noted, persuasive reasons for dispensing with a jury trial at common law and remain even more so today. Thus, it is apparent that New York has properly followed the common-law tradition and, in *593 my opinion, has validly drawn the line between cases in which a jury is required and those in which such a jury may be dispensed with, at nonindictable offenses with a maximum imprisonment of one year.
In this respect, it is of interest to note that despite the existing shorter six-month punishment “ cut-off ” point for jury trials in Federal courts, Congress has recently drawn a distinction, similar to New York, between crimes punishable by more than one year and other crimes. Thus, in the newly enacted Federal Omnibus Crime Control and Safe Streets Act of 1968 (U. S. Code, tit. 18, § 2516, subd. [2]), State courts are authorized to issue wiretap and “ bugging ” orders in investigations of non-enumerated crimes only where the penalty therefor is more than one year’s imprisonment. It would appear, therefore, that Congress has now joined New York’s traditional view that one year is the significant “ cut-off ” period in distinguishing between serious and petty crimes.
In the instant matter, however, contrary to the contentions of petitioner and the petitioner-intervenor, it clearly appears that respondents Bowman and Puryear face the possibility of up to four years of imprisonment. While Bowman’s request for youthful offender treatment (Code Crim. Pro., § 913-e) has heretofore been denied, there can be no doubt that both respondents, being between the ages of 16 and 21 years, are eligible after conviction for a reformatory sentence of imprisonment as “ young adults”, pursuant to the provisions of article 75 (§ 75.00 et seq.) of the Penal Law.
The pertinent provisions of this applicable law provide as follows:
“ § 75.00 Reformatory sentence of imprisonment for young adults.
“ 1. Young adult. For sentencing purposes, a young adult is a person who is more than sixteen and less than twenty-one years old at the time the court imposes sentence upon him.
‘ ‘ 2. Reformatory sentence. When the court sentences a young adult for a crime, the court may, in lieu of any other sentence of imprisonment authorized by this title, impose a reformatory sentence of imprisonment. This shall be a sentence to imprisonment for a period of unspecified duration which shall commence and terminate as provided in section 75.10 and the court shall not fix the minimum or maximum length of the period. * * *
“ § 75.10. Calculation of reformatory sentence.
“ 1. Commencement and termination. A reformatory period commences when the young adult is received in an institution # * * and terminates upon the first to occur of (a) discharge *594 of the person by the state board of parole, or (b) service by the person of four years from the date the period commenced ” (emphasis added).
In an alternative “ local reformatory ” sentence of imprisonment for young adults (which may be imposed only by a court within a city or county that has established a duly certified reformatory), section 75.20 of the Penal Law permits a three-year sentence .to such institution.
Thus, there can be no doubt that Bowman and Puryear, as well as any other criminal defendant who qualifies as a “ young adult” pursuant to the provisions of section 75.00 (supra), face a duration of punishment and incarceration which falls squarely within the interdiction of Duncan v. Louisiana (supra).
Inasmuch as the United States Supreme Court has already determined that the possibility of a two-year sentence warrants a trial by jury, the possibility of a three- or four-year sentence, obviously, mandates the same trial procedure. Significantly, statistical records of the Criminal Court of the City of New York indicate that in the calendar years of 1966 and 1967, almost two thousand *1 young adults ’ ’ received reformatory sentences upon conviction of a misdemeanor without a trial by jury. The first six months of 1968 have resulted in more than 300 such convictions, all without a jury trial, all, apparently, in violation of the constitutional guarantee enunciated in Duncan.
The District Attorney has argued that reformatory sentences of more than one year, imposed for misdemeanors, “ have been consistently upheld ”, citing People ex rel. Kipnis v. McCann (199 App. Div. 30 [1921], affd. 234 N. Y. 502 [1922]), People v. Tower (308 N. Y. 123 [1954]) and People v. Wilson (17 N Y 2d 40 [1966]). It is apparent that these cases all predate the recent Duncan decision and, therefore, no longer govern or control the pending application.
Likewise, cases cited and relied on by the Attorney-General of the State of New York which deal with “ youthful offender ” treatment are wholly inapplicable here (e.g., People v. “ Y.O. 2404 ”, 57 Misc 2d 30). It must be emphasized that this court is concerned here with respondents who qualify as “ young adults ’ ’ rather than individuals who may be entitled to receive special treatment as “youthful offenders”. The distinction between the two is significant and, apparently, has been disregarded or minimized by both petitioners. Concededly, a person afforded youthful offender treatment pursuant to the provisions of title VII-B of part VI of the Code of Criminal Procedure, avoids the stigma of a criminal trial, a criminal conviction, a criminal record and its consequences. Therefore, it may realis *595 tically be argued that such matters are not “ criminal proceedings ’ ’ and do not come within the purview of the constitutional guarantee of a jury trial for those accused of a crime (see People v. Larry K., 58 Misc 2d 526).
In apposition to the youthful offender treatment, however, the reformatory sentence faced by Bowman, Puryear and other eligible ‘1 young adults ’ ’ can result only after a conviction for a crime and all of its attendant consequences. Thus, unlike the youthful offender who has no criminal record after his special proceeding, a convicted young adult thereafter faces certain serious civil disabilities which attach to his reformatory or prison conviction. Civil service employment, for example, may be barred to him, as well as private employment which requires bonding or licensing (Civil Service Law § 50; General Business Law, § 74). Moreover, a convicted young adult, unlike a youthful offender, has a “ record ” which will forever follow him, wherever he may go.
Both petitioner and petitioner-intervenor also urge that a sentence under article 75 is rehabilitative rather than penal and, therefore, cannot be the basis for the denomination of a crime as “ serious ”. While I do not deny that the aim of rehabilitating a convicted young adult is proper, laudatory and desirable, I find little merit to petitioners’ contention.
First of all, it must be kept in mind that despite the alleged benevolent objectives of article 75, as noted by petitioners, there is nothing in the language of this statute which legally prohibits, deters or otherwise prevents a sentencing court from imposing the longer reformatory sentence merely as a punitive measure rather than an effort to rehabilitate a convicted defendant.
Secondly, to claim that a possible four-year imprisonment in a “ reformatory ” differs, for the purposes of this proceeding, from a similar period of incarceration ina“ prison ’ ’ is merely a futile, euphemistic exercise in semantic machination.
This very same argument was laid to rest by the United States Supreme Court in a recent decision, Matter of Gault (387 U. S. 1, 27 [decided May 15, 1967]). Although the Supreme Court had no occasion to reach the jury issue here involved in the Gault case, nevertheless, in applying the requirements of due process to a juvenile, Mr. Justice Fortas, delivering the opinion of the court, significantly stated, in part, as follows: “ A boy is charged with misconduct. The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence — and of limited practical meaning — that the institution to which he is committed is called an Industrial School. The fact of the *596 matter is that, however euphemistic the title, a ‘ receiving home ’ or an ‘ industrial school ’ for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes ‘ a building with whitewashed walls, regimented routine and institutional hours * * * ’. Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees, and 1 delinquents ’ confined with him ”.
The same comments are wholly applicable here. Regardless of the intent and desire to rehabilitate Bowman and Puryear in the event they are convicted and imprisoned in a reformatory, they will nevertheless be removed from society and confined to this institution for the duration of their reformatory sentence. Their individual liberty and freedom will be gone; they will be guarded by State or local government employees and custodians and will forfeit, for the period of their incarceration, their individual right to enjoy the association of their relatives and friends. Simply stated, a prison is still a prison, whether it is called a reformatory, jail or detention home.
In view of this potential future for Bowman and Puryear, “it would be extraordinary”, as stated in Gault (supra), if these respondents were not to be afforded all the protection our Constitution guarantees them, including the right to trial by jury, as directed by respondent Judge Rosenberg in the Criminal Court.
It may be questioned by some as to why a “ young adult ” accused of a misdemeanor is entitled to greater protection than the law will afford a person over 21 years of age. While at first blush this result seems inequitable and unjust, in reality, the opposite is the fact. Under existing law, an adult (over 21) can receive a maximum jail sentence for a misdemeanor conviction of no more than one year. A “young adult” (supra), however, upon conviction for the very same offense, faces the possibility of a jail sentence four times as long under applicable New York law (supra). This dire result is even more highlighted by the facts of the Gault case. The offense there involved concerned an alleged lewd phone call by a youngster (15 years old) to a woman. As noted by Mr. Justice Portas (supra, pp. 8-9), the penalty therefor, as specified in the Criminal Code of the State of Arizona and which would apply to an adult, is a $5 to $50 fine or imprisonment for not more than two months. However, because defendant was a juvenile rather than an adult, he was committed to the *597 State Industrial School, ostensibly for the purpose of rehabilitation, for a possible period of six years.
Furthermore, contrary to petitioners’ contention, sociologists and penologists will undoubtedly agree today that the concept of prisons as retributive punishment only has long been rejected. The distinction between prisons and reformatories in this regard is merely that the latter give specialised care toward the otherwise general objective of rehabilitative incarceration. To deny the truism that a sentence of imprisonment in a reformatory is still a sentence of imprisonment is merely to use labels in an effort to circumvent the reality and similarity of confinement and incarceration in both types of institutions.
In recapitulation, I repeat that adults convicted of a misdemeanor, who thereby may receive a maximum prison sentence of one year, are not entitled to the protection of a jury trial within the intendment and scope of Duncan v. Louisiana.
I hold, however, that Bowman and Puryear, both of whom are “ young adults ” and thus face reformatory sentences in excess of the two-year period involved in Duncan (Penal Law, § 75.00 et seq.), must be tried by a jury.
It necessarily follows that section 40 of the New York City Criminal Court Act, to the extent it denies a jury trial to young adults who face reformatory sentence pursuant to the provisions of article 75 of the Penal Law, is unconstitutional and void..
I am not unappreciative of the effect and impact this determination may initially have upon the efficiency and cost of administration in the Criminal Court of the City of New York. While these factors, undoubtedly, are important, I believe they must, of necessity, yield to the paramount constitutional rights of those young adults who are compelled to appear as parties defendants before the Judges of that tribunal.
Accordingly, the application is denied and the petition is dismissed.