Edward J. Greenfield, J.
Petitioners bring on this article 78 proceeding in the nature of a writ of prohibition, seeking to restrain a Judge of the Criminal Court of the City of New York from proceeding with a proposed hearing which, it is claimed by petitioners, confronts them with the imminent, and irreparable deprivation of their constitutional rights.
This court has the undoubted power under CPLK, 7801 to grant the relief sought, and to prohibit the proposed proceedings in an inferior court. The remedy of prohibition is restricted to those circumstances which require a forbidding of the exercise of unwarranted power (Matter of Lyons v. Goldstein, 290 N. Y. 19). That power is to be exercised rarely and cautiously (Matter of Duchin v. Peterson, 12 A D 2d 622; Matter of Marra v. County Ct. of Genesee County, 17 A D 2d 902; Matter of Drug Research Corp. v. Justices of Ct. of Spec. Sess., 36 Misc 2d 23; Vergara v. Criminal Ct. of City of New York, 59 Misc 2d 134, affd, 32 A D 2d 838); but in those instances where the lower tribunal is about to exceed its powers and the ordinary remedy of appeal is inadequate or insufficient, the court where the petition is brought should act resolutely to stop it before irretrievable harm is perpetrated. (Matter of Hogan v. Court of General Sessions, 296 N. Y. 1.)
While a writ in the nature of prohibition may not be utilized for the purpose of reviewing ordinary interlocutory determina *1044 tions by a court, for which the appropriate remedy is appeal after conclusion of the entire case, it is available at the outset to stop an illegal procedure before any determination is made. Basically prohibition is a preventive rather than a remedial process. (Weiner v. Savarese, 109 N. Y. S. 2d 14; Matter of Almroth v. Boland, 171 Misc. 314, affd. 258 App. Div. 378; Matter of Hogan v. Rosenberg, 58 Misc 2d 585, revd. on other grounds 24 N Y 2d 207). Prohibition may not only restrain an inferior court from an unwarranted assumption of jurisdiction, but is also designed to prevent the exercise of authorized powers in an illegal manner. (Matter of Hogan v. Court of General Sessions, 296 N. Y. 1, supra; Matter of New York State Teachers Assn. v. Helsby, 57 Misc 2d 1066; Matter of Haas, 33 A D 2d 1.)
Prohibition, while rarely granted, may always be resorted to to prevent a threatened abuse of power constituting an illegal invasion of a substantial right. (Matter of Consolidated Edison Co. v. Murtagh, 201 Misc. 244, affd. 279 App. Div. 865.) Even if some aspects of the court’s ultimate determination might be subject to review, if the remedy of appeal were incomplete or not as efficacious as the needs of the situation required, prohibition would lie. (Matter of Melish v. Baker, 6 A D 2d 819.)
“ It has been said that it is ‘ far better to prevent the exercise of an unauthorized power than to be driven to the necessity of correcting the error after it is committed.’” (23 CarmodyWait 2d, N. Y. Practice, § 145:227, p. 819, citing Appo. v. People, 20 N. Y. 531, 542.) “It is no argument against granting a prohibition order here, that it will restrain interlocutory, intermediate or incidental proceedings in a suit of which the tribunal to be restrained has general jurisdiction ’ ’. (Matter of Public Service Comm. v. Norton, 304 N. Y. 522, 530.)
In the opinion of this court, there is substance to the assertion of the petitioners, and a more than adequate showing is made out that this is, indeed, one of those instances in which prohibition is the only appropriate remedy to forestall an impending judicial proceeding which by its very nature transgresses constitutional safeguards.
This proceeding arises, as do many cases involving constitutional questions under the First Amendment these days, from criminal proceedings under the obscenity laws — more specifically, a criminal charge against the petitioners for exhibiting an allegedly obscene motion picture. It should be noted however that prohibition is sought not against criminal prosecution of the petitioners under the obscenity statute (Penal Law, § 235.05), but against a proposed proceeding, prior to the criminal trial, *1045 for a warrant authorizing seizure of the film pursuant to section 791 et seq. of the Code of Criminal Procedure.
Unilateral decisions by the police and other enforcing authorities in the first instance as to what constitutes obscene material have been proscribed since Marcus v. Search Warrant (367 U. S. 717 [1961]). In A Quantity of Books v. Kansas (378 U. S. 205 [1964]) the requirement for a prior adversary hearing before seizure of allegedly obscene books was set forth. In Lee Art Theater v. Virginia (392 U. S. 636 [1968]), the Supreme Court condemned the seizure of a copy of a film without prior adversary hearing, leaving open the question of whether a Judge rather than a police officer should view the film before issuing an ex parte warrant. The question appears to have been resolved by Bethview Amusement Corp. v. Cohn (416 F. 2d 410 [2d Cir.; 1969]) and Bongiovanni v. Hogan (309 F. Supp. 1364 [S. D. N. Y.; 1970]). (See note: Prior Adversary Hearing on the Question of Obscenity, 70 Col. L. Rev. 1403-1425 [Dec., 1970].)
Although no specific procedures are laid down under the provisions for a warrant of search and seizure pursuant to section 791 et seq. of the Code of Criminal Procedure, there was in this case some rudimentary effort to comply with the requirements of an adversary hearing prior to seizure of the film. The case appears to have been initiated by a communication from the police to an assistant district attorney, who then selected the respondent, one of almost 100 Judges of the Criminal Court, and invited him to see the picture then being shown at the Cameo Theater in New York. After viewing the film, the Judge concluded it was obscene, and warrants were issued for the arrest of the ticket seller, the ticket taker, the projectionist and the theater supervisor, all salaried employees without authority to determine the type of motion picture to be exhibited in the theater. The Judge then set the matter down for an ‘ ‘ adversary hearing ’ ’ prior to issuing a warrant of seizure. He announced beforehand, however, that since he had already seen the film and had strong views about its obscene features, he would accept no testimony as to whether the picture, in fact, appealed to prurient interests or transgressed current community standards and would consider only testimony as to whether the film had any redeeming social value. The propriety of a Criminal Court Judge’s proceeding to order the seizure of a film under the search warrant statute was questioned in Astro Cinema Corp. v. Mackell (422 F. 2d 293 [2d Cir.; 1970]) and Overstock Book Co. v. Barry (436 P. 2d 1289 [2d Cir.; Dec. 23, 1970]). In both those cases, while the court refused to enjoin a criminal proceeding, it directed the return of the seized material. In this case, we are *1046 directly confronted with the propriety of a film seizure under the rubric of a warrant of search and seizure.
In both Bethview and Astro Cinema (supra) the Criminal Court Judge’s viewing of the film before ex parte issuance of the warrant was held insufficient.
I am informed that since then there has been in New York City one such ‘ ‘ adversary hearing ’ ’ prior to this, conducted by Judge Jack Rosenberg of the New York City Criminal Court, reported in People v. Shiffrin (64 Misc 2d 311). In that case, Judge Rosenberg viewed the film himself, ordered the arrests, then set the matter down for a hearing before himself, hearing testimony from witnesses for the distributor and theater managers before concluding that the film he had viewed was obscene and that there was probable cause for the'issuance of a warrant authorizing the seizure of the film.
Since, ‘ ‘ if the State wishes to interfere substantially with distribution of films or books, it must first provide, as we have been instructed, an adversary hearing capable of affording a 1 reasonable likelihood ’ that nonobscene films or books will reach the public ” (Astro Cinema Corp., v. Mackell, supra, p. 296), and there is no statutory procedure explicity spelled out for such a hearing with respect to films to be seized by warrant, all sides are tentatively groping for a workable and satisfactory procedure that will meet all constitutional requirements and safeguard the rights of all interested parties. In my opinion, the procedure about to be embarked upon by Judge Schwalb does not do that, and in fact, appears to be a flagrant deprivation of basic rights in several respects:
1. The procedure does not allow an impartial tribunal for hearing. The same Judge who was selected to view the film and made an ex parte determination as to its obscenity now is to conduct an adversary hearing to determine if there is probable cause to believe that the picture was obscene. It would be difficult, indeed, to expect that Judge to erase from his mind his prior impressions and review impartially testimony presented by both sides on the self-same question he has already decided. The temptation to vindicate one’s prior judgment must be overwhelming. Section 794 of the Code of Criminal Procedure requires the Magistrate, before issuing the warrant, to examine under oath the complainant and any witnesses. Can he do this if he himself has become a witness 1 Judicial propriety and self-restraint require that he not sit. ‘1 Since it is of extreme importance that litigants have the utmost confidence in his impartiality and freedom from bias, a judge may, and in some instances should, *1047 refrain from trying a case * * * where the judge has not only been responsible in initiating the proceeding but has actually expressed an opinion in a manner adverse to the party requesting disqualification.” (32 N. Y. Jur., Judges, § 41, pp. 391-392.)
The "United States Supreme Court has declared in In re Murchison (349 U. S. 133, 137 [1955]): “ It would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused as a result of his investigations # * * A single ‘ judge-grand jury ’ is even more a part of the accusatory process than an ordinary lay grand juror. Having been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of the accused. * * * Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer.”
Our own Court of Appeals has stressed the same fundamental rule in Sharkey v. Thurston (268 N. Y. 123,126): “ It is a fundamental rule of our common law embodied in the Constitutions of our State and Nation that no person may be adjudged guilty and punished upon a charge of wrongful conduct without a hearing. Decision must await the hearing of the defense. The cause may not be prejudged, and no man may be both accuser and judge. Otherwise a hearing becomes a fiction, and no fiction can destroy constitutional guarantees.”
2. The proposed procedure permits no participation by the real parties in interest. The petitioners here, who are the subjects of the criminal charges, are employees who, while certainly interested in their own well-being, are not directly concerned in the question of the merits or lack of merits of the motion picture involved. Unlike People v. Shiffrin (supra), where the defendant was vice-president of the corporation distributing the film nationally and where there was full participation of the distributor and theater owners, here the owner of the subject motion picture, the distributor, and the theater owner, are not parties to the proceeding. They have had no opportunity to answer the charges against the film itself and to defend the film, except insofar as the court might in the future permit them to intervene. They have no standing as matter of right. It would appear to be basic that a true adversary proceeding would call for the presence of the truly adverse parties, i.e., those who own the film and its exhibition rights and who have a- genuine financial stake in the outcome.
3. There is a limited right to present evidence. Assuming that the ticket taker, the ticket seller, the theater cleaner and *1048 comparable employees could muster, directly or indirectly, the battery of expert witnesses who may be called upon to determine the complex issues of obscenity, the respondent has frankly indicated that he has already made a preliminary determination of obscenity, that all the People need do is introduce the film and rest, and that he would hear testimony only on limited aspects of the issues of obscenity. Such a truncated trial can hardly pass muster as an impartial judicial determination after a hearing. Possibly it is more candid and less frustrating to announce beforehand that the decision is foreordained rather than go through an extensive hearing and then reject all the testimony proffered. (Cf. Peoples. Shiffrin, supra.) The right to present all relevant evidence freely and to have it carefully considered goes hand-in-hand with the right to have the hearing held before someone other than the initiator and the accuser.
4. There is only a limited, inadequate and contingent' right of appeal. Under the proposed procedure a determination of obscenity would result in the seizure of a film and its withdrawal from the market for exhibition. Since the issuance of a warrant of seizure is a nonfinal determination in a criminal proceeding, there would be no right of appeal until after defendants had been convicted in the criminal case. The states of the criminal calendars being what they are, and the defendants not being imprisoned, it would undoubtedly take many months before the case was reached for trial. If they were convicted, defendants could bring the entire case up for appeal, including the underlying determination of the film’s obscenity. If, on the other hand, the individual defendants, as mere employees, were acquitted for lack of scienter as to the nature of the film, which would be quite possible, there would be no judgment of conviction to appeal from, and the owners, producers and distributors of the film would have to languish in limbo with no genuine remedy, except for a subsequent attempt to initiate a proceeding to compel the return of the film. Since, under section 809 of the Code of Criminal Procedure,,there is no basis for return as long as probable cause justifying the seizure had existed in the first instance, the parties would probably be relegated to a lengthy replevin action after the entire criminal matter had been concluded. During all this time the film would have been withdrawn from exhibition and would presumably lose its currency and hence its value, before the ultimate question of obscenity could be finally resolved. Even if we were to conclude that the owners and exhibitors could achieve an appeal of the obscenity question through defendants, the employees, such an appeal, again, would-be months, even years, after the seizure of the film and its with *1049 drawal from the market. When we are dealing with the delicate and sensitive area of constitutionally protected free speech, we must be careful to weigh the damage which would result from arbitrary and possibly erroneous determination as against that which would follow from a continuing exhibition of the film for a limited period. The striking of a balance calls for presumptions in favor of continued exhibition until it has been adequately and satisfactorily shown that that film is unworthy of public exhibition. (See Freedman v. Maryland, 380 U. S. 51; Blount v. Rizzi, 400 U. S. 410, [Jan. 14, 1971].)
5. Suppression is permitted on an inadequate burden of proof. One of the major difficulties with a Criminal Court proceeding under sections 791 and 792 of the Code of Criminal Procedure, dealing with the issuance of warrants for search and seizure, is that First Amendment rights are dealt with and possibly suppressed on the basis of minimal burdens of proof being cast on the public agency seeking suppression. Section 792 (subd. 3) of the code permits a warrant to issue for seizure of “ property used or possessed with intent to be used as the means of committing a crime or offense ”. Section 795 requires that there be set forth the facts “ tending to establish sufficient grounds for granting the application ” (emphasis supplied) and “probable cause for believing that such grounds exist.” Section 796 authorizes the issuance of the warrant if the Judge is satisfied as to the existence of sufficient grounds and there is probable cause to believe their existence. This is a tenuous burden indeed. All the agency seeking suppression need do is to establish, not “beyond a reasonable doubt,” and not “by a fair preponderance of credible evidence ” but merely with a demonstration of “probable cause ” that there are “circumstances tending to establish sufficient grounds ” (italics supplied) . A mere probability as to a tendency in the mind of one man certainly should not be the basis for a seizure of printed or cinematic material. The protections of the Constitution require much more than this.
The Supreme Court of the United States in Blount v. Rizzi (400 U. S. 410, supra) has recently had occasion to comment on the inadequacy of the probable cause standard in seizing allegedly obscene material. In that case the court had under consideration section 4006 of title 39 of the United States Code (1964 ed.; now U. S. Code, tit. 39, § 3006). Under that statute, the Postmaster General, following administrative hearings, was empowered to bar the use of the mails to dealers who trafficked in allegedly obscene materials. Section 4007 provided that the court could enter a temporary restraining order and prelimi *1050 nary injunction “upon a showing of probable cause to believe the statute is being violated, ’ ’ a standard somewhat more stringent than that set forth in sections 794 and 796 of the New York Code of Criminal Procedure. The Supreme Court specifically affirmed the prior holding of the United States District Court in United States v. Book Bin (306 F. Supp. 1023) that a finding merely of “probable cause” to believe material was obscene was not a constitutionally sufficient standard. The court held that the Government must assume the burden not only of instituting appropriate judicial proceedings, but also the burden of persuasion. In view of the Supreme Court’s holding that the statute authorizing the issuance of such an order on probable cause during the pendency of the proceedings did not meet the requisites of the First Amendment, it seems equally clear here that seizure on probable cause prior to a final judicial determination of a question of obscenity would be a severe restriction on the exercise of First Amendment rights.
I must, therefore, conclude that a proceeding under section 791 et seq. of the Code of Criminal Procedure for the seizure of allegedly obscene films transgresses the safeguards laid down by the United States Supreme Court pursuant to the Constitution of the United States and cannot be permitted. It would make little sense to permit a hearing to go forward in the manner proposed, and with the inadequate statutory standards involved, which could be remedied only after the final determination of the criminal trial and the appeal therefrom, if indeed there were ever a conviction based upon the defendants ’ knowledge of the obscene nature of the film involved. As has been noted, there is no specific statutory scheme set forth for appropriate adversary hearings with constitutional safeguards under the search warrant provisions of the Code of Criminal Procedure. While such a warrant may be appropriate in discovering and safeguarding stolen property, narcotics, fire-arms, gambling paraphernalia or evidence likely to be disposed of, the taking of those items would not appear in any way to impair or threaten to impair precious First Amendment rights. (See Marcus v. Search Warrant, 367 U. S. 717, at pp. 730-731.)
Indeed, the New York Legislature enacted section 22-a (L. 1941 ch. 925, § 2, amd. L. 1954 ch. 702; L. 1957 ch. 182; L. 1967 ch. 681, § 7, eff. Sept. 1, 1967) of the Code of Criminal Procedure, setting forth a wholly different method of dealing with the suppression of allegedly obscene writings or photographs of an indecent character. The procedure under that section was approved by the United States Supreme Court in Kingsley Books v. Brown (354 U. S. 436), and was declared in Freedman *1051 v. Maryland (380 U. S. 51, 60, supra) to be a model of injunctive procedure to prevent the sale of obscsene books. The section specifically confers jurisdiction on the Supreme Court rather than the Criminal Court to enjoin the sale of obscene prints and articles by bringing on an action for injunction. The person or corporation sought to be enjoined is entitled to a trial of the issues within one day after joinder, and a decision given two days after a trial. A final order or judgment of injunction is required before there may be any seizure and, of course, appeal may directly follow. Further, since the injunctive procedure is invoked the standard of proof is not “ probable cause ” or “ facts tending to establish grounds ” but a fair preponderance of the credible evidence. (Burke v. Kingsley Books, 8 Misc 2d 306; Larkin v. Putnam’s Sons, 40 Misc 2d 28, 32, revd. on other grounds 20 A D 2d 702, revd. 14 N Y 2d 399.) Indeed, Mr. Justice Coleman, in Larkin v. G. I. Distributors (41 Misc 2d 165,168, affd. 19 A D 2d 609, affd. 14 N Y 2d 869) held that ‘ ‘ what is condemned is only what is ‘ incontestably found to be obscene.’” (Kingsley Books v. Brown, supra, p. 440, italics supplied.)
There is another statute, section 410.00 of the Penal Law, dealing with the seizure and forfeiture of equipment used in photographing or filming pornographic pictures. This statute calls for seizure by the Corporation Counsel of New York City or Buffalo or the County District Attorney elsewhere of photo or projection equipment used for making pornographic film and the institution of proceedings in the Supreme Court within 30 days to declare a forfeiture. Notice of the proceeding is to be served on the owners of the seized property, although under this procedure the burden is upon the property owners to establish affirmative defenses or lack of scienter. While this is a proceeding under the Penal Law, the statute does not spell out whether the case for forfeiture must be made out in the first instance beyond a reasonable doubt, but it certainly is not predicated upon mere probable cause.
While an allegedly obscene film is not itself comprehended within section 410.00 of the Penal Law,, it might be deemed to come within section 22-a of the Code of Criminal Procedure, which deals with obscene prints and articles, and enumerates various categories of written and photographic material, including any indecent “ image ”. While the specific words “ motion pictures ” or “ films ” are omitted from the statute, it does not seem likely that one standard would be applicable for printed material and photographs and an entirely different standard and procedure for projected photographs that move.
*1052 A hearing here under section 22-a, or on an application for an injunction within the traditional and inherent powers of this court, seems eminently more desirable than a proceeding for a warrant of seizure in the Criminal Court under the Code of Criminal Procedure (§ 791 et seq.). Essential to any such fair procedure would be (1) full notice to the property owner and other persons most directly interested; (2) an opportunity to answer, defend and participate; (3) an opportunity freely to present all relevant evidence; (4) the burden of proof to justify seizure being placed upon the Government; (5) the right to a speedy and direct final determination of obscenity before the film is seized or withdrawn from the market; (6) the opportunity for immediate appeal on the central issue and; (7) of course, a determination made in a judicial and not an inquisitorial setting so that the accuser is not the Judge. Whatever procedure be adopted in the future, it is amply clear that the impending Criminal Court proceeding cannot pass muster with respect to these elemental safeguards. The motion to dismiss the petition is accordingly denied. There being no factual issues to be determined, judgment is granted to the petitioners (CPLR 409, 411, 3211, subd [c]), and the respondent is prohibited from proceeding with the hearing on issuance of a warrant of seizure.