Thomas D. GOSS a/k/a Thomas Duggan,
Plaintiff-Appellee,

v.

STATE OF ILLINOIS, Frank G. Sain,
Sheriff of Cook County, and Daniel P.
Ward, State's Attorney of Cook County,
Defendants-Appellants.

No. 13773.

United States Court of Appeals
Seventh Circuit.

Jan. 24, 1963.

Thomas A. Hett, James R. Thompson, Chicago, Ill., Daniel P. Ward, State's Atty., Cook County, for appellants; Ronald Butler, Asst. State's Atty., of counsel, for appellant.

Thomas D. Goss, a/k/a Thomas Duggan, pro se.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

DUFFY, Circuit Judge.

Thomas D. Goss, also known as Tom Duggan, filed the complaint herein under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. He asked the District Court to declare that he will be denied his right to due process of law as well as his freedom of speech and press if the mittimus for his arrest held by the State of Illinois is not held to be void and its enforcement permanently enjoined.

The District Court found the issues in favor of the plaintiff. It issued an injunction restraining defendants from arresting or threatening to arrest plaintiff as was ordered by a judge of the Superior Court of Cook County, Illinois.

During 1955, plaintiff Goss appeared five nights a week on an evening television program known as the Tom Duggan show, which was broadcast from a Chicago station. This was a form of conversation-commentary show, dealing heavily in criticisms and sarcasms, often including unrestrained attacks on public officials and others involved in current news stories.

On July 26, 1955, a Chicago citizen filed a divorce complaint against his wife in the Superior Court of Cook County, Illinois (Champagne v. Champagne, 55 S 11166). He moved for the custody of his child and testimony in support of such motion tended to implicate the child's mother in improper conduct with Thomas D. Goss, the plaintiff herein. Goss testified as a witness. At the conclusion of the hearing, temporary custody of the child was awarded to the paternal grandparents.

At various times during the child-custody proceeding, Goss, in his Tom Duggan show, commented on the then pending proceedings, and more particularly, on the parties, witnesses and attorneys.

The District Court stated: "His remarks were severe and tended to hold the persons about whom he commented up to public ridicule."

On November 1, 1955, the Judge before whom the custody proceedings had been held, caused the institution of contempt proceedings against Goss, and later heard and ruled on the order to show cause.

In the contempt hearing, Goss sought a change of venue. He admitted the statements attributed to him, but stated his motive was to defend himself before his television audience against the charge of adultery raised in the child-custody proceedings. The Judge found Goss guilty of "criminal indirect contempt." Goss was sentenced to a 10-day jail sentence and a $100 fine.

The Supreme Court of Illinois, on direct review, decided that Goss had been entitled to a change of venue. However, the Supreme Court reviewed the contempt proceedings and held the statements of Goss on television "constituted a clear and present danger to the administration of justice." People of State of Illinois v. Goss, 10 Ill.2d 533, 141 N.E.2d 385, 391. The Supreme Court found the intimidation was not of the trial judge, but of the parties and their witnesses.

The contempt case against Goss was remanded to the Superior Court of Cook County, and was assigned to another judge. It was stipulated that the record in the original proceeding would stand as evidence in the second hearing. The People offered no additional testimony. However, Goss again testified and called several witnesses who were heard.

Goss was again found guilty of contempt and the same penalties were imposed as in the first proceeding. On direct appeal, the Illinois Supreme Court affirmed, People of State of Illinois v. Goss, 20 Ill.2d 224, 170 N.E.2d 113. Certiorari was denied by the United States Supreme Court, Goss v. Illinois, 365 U.S. 881, 81 S.Ct. 1029, 6 L.Ed.2d 192; rehearing denied, 366 U.S. 941, 81 S.Ct. 1658, 6 L.Ed.2d 852.

We hold the Civil Rights Act (42 U.S.C. § 1983) does not confer jurisdiction upon the federal district court to collaterally attack this state criminal contempt conviction which has been affirmed by the highest state court.

By commencing this suit in the federal court after the Illinois Supreme Court had affirmed the criminal contempt conviction, and the Supreme Court of the United States had denied certiorari, plaintiff seeks to thwart the final state court judgment by relitigating, in a trial *de novo,* the very issues that had been litigated in the state court. If this newly discovered appellate procedure is permitted, many state criminal prosecutions will be faced with chaos and unenforceability.

Presumably, because petitioner was not in custody, he did not seek relief by habeas corpus. In Brown v. Allen, 344 U.S. 443, at page 456, 73 S.Ct. 397, at page 407, 97 L.Ed. 469, the Supreme Court stated: " * * * denial of certiorari marks final action on state criminal proceedings. In fields other than habeas corpus with its unique opportunity for repetitious litigation * * * the denial would make the issues *res judicata.*"

We live in a jurisdiction of two sovereignties. Each has its own system of courts which operates in a common territory. Great care should be taken to avoid embarrassing conflicts. An accused should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the state unless the necessary operation of such machinery prevents his having a fair trial. Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620.

State judges, as well as federal, have the responsibility to respect and protect persons from violation of federal constitutional rights. The Supreme Court of the United States has the right to pass on any such cases decided by the highest court of a state. Also, there is the remedy of federal habeas corpus which is predicated upon the accused submitting himself to custody after having exhausted state remedies.

Federal courts have been and should be reluctant to interfere by injunction in a state court criminal proceeding. As stated by Mr. Justice Douglas in his dissent in Pugach v. Dollinger, 365 U.S. 458, at page 462, 81 S.Ct. 650, at page 652, 5 L.Ed.2d 678: "The strongest expression of that reluctance is found in the general prohibition of federal injunctions 'to stay proceedings in a State court.' 28 U.S.C. § 2283."

28 U.S.C. § 2283 reads: "Stay of State court proceedings. A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Several decisions have pointed out that this section has not been modified nor is an exception engrafted thereon by the terms of the Civil Rights Act (42 U.S.C. § 1981 et seq.) or the Declaratory Judgment Act (28 U.S.C. § 2201 et seq.). H. J. Heinz Co. v. Owens, 9 Cir., 189 F.2d 505; Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407; Smith v. Village of Lansing, 7 Cir., 241 F.2d 856; Sexton v. Barry, 6 Cir., 233 F.2d 220.

Although we have heretofore held herein that the District Court had no jurisdiction of this cause, in any event, 28 U.S.C. § 2283 would bar the assumption of jurisdiction. No act of Congress has authorized an exception to § 2283 which would cover this case. There is no judgment of a federal court to be protected. The clause "in aid of jurisdiction" has no application under the facts of this case.

Various questions upon the merits have been discussed including whether a clear and present danger to the administration of justice existed. We do not reach these questions.

Reversed and remanded with directions to dismiss the complaint herein.

Reversed.