**James RICHARDSON et al., Plaintiffs,**

v.

**Hon. Edward R. DUDLEY et al.,
Defendants.**

**No. 68 Civ. 4616.**

United States District Court
S. D. New York.

Jan. 17, 1969.

Harold J. Rothwax, New York City, for plaintiffs, Richardson, Pagan, Drysdale, Wing, Collier, Ratliff, and Morton; Michael B. Rosen and Martin A. Schwartz, New York City, of counsel.

William Leibovitz, Ellis, Stringfellow, Patton & Leibovitz, New York City, for plaintiffs, Wilson and Simmons.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, for defendants; Maria L. Marcus, Asst. Atty. Gen., of counsel.

Frank S. Hogan, Dist. Atty., of New York County, for intervenor-defendant; Michael Juviler, Lewis R. Friedman, Asst. Dist. Attys., of counsel.

Before KAUFMAN, Circuit Judge, and FRANKEL and MANSFIELD, District Judges.

## OPINION

FRANKEL, District Judge.

The nine plaintiffs in this case, suing for themselves "and members of their class," are defendants in criminal proceedings which have been partially processed and remain pending in the Criminal Court of the City of New York. Each of them, in circumstances to be more fully detailed below, has moved in that Court for a trial by jury, claiming a right to such a trial under the Sixth Amendment as it is made applicable to the States by the Fourteenth, Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Following the denial of those motions, and while all of them remain free "on parole" (or, in one case, on bail) awaiting trial without a jury, they have come here seeking (1) a declaratory judgment which would in effect reverse the rulings of the state tribunal by invalidating two state statutes which have been held to preclude jury trials in their cases, and (2) a permanent injunction restraining the defendants (Judges of the New York City Criminal Court)[1] "from denying to plaintiffs and the class they represent the opportunity to be tried by jury in cases involving serious crimes with possible imprisonment of up to one year and order[ing] the defendants * * * to grant to plaintiffs and the class they represent the opportunity to be tried by jury in cases involving serious crimes." Promptly after filing the suit, plaintiffs moved for a preliminary injunction and the convening of a three-judge court. Defendants cross-moved for dismissal of the complaint, urging at the same time that there was no question of sufficient substance to warrant a hearing by three judges. Without dwelling for too long over the unrewarding subtleties of deciding whether plaintiffs' views, though they seemed erroneous at the outset, were "substantial" or "unsubstantial," the judge to whom the case first came referred it to this tribunal. We have considered the opposing motions and conclude, for reasons outlined hereafter, that the complaint should be dismissed.

### I.

The two targets of plaintiffs' constitutional attacks are:

(1) § 913–h, N.Y.Code of Criminal Procedure, which governs cases of "youths" (aged 16 through 18) without prior felony convictions who have been found eligible for treatment as alleged "youthful offenders." In the case of such a youth, this section provides: "In the event the defendant enters a plea of 'not guilty,' or, if the court on its own motion so direct, the defendant shall be tried for the purpose of determining whether he shall be adjudged a youthful offender. *The trial shall be held by the court without a jury.*" (McKinney 1958) (Emphasis added).

(2) § 40 of the N.Y. City Criminal Court Act, the pertinent first sentence of which says simply: "All trials in the court shall be without a jury." (McKinney Supp.1968).

Six of the nine plaintiffs face trial upon a variety of alleged wrongs classified under New York Penal Law as "class A misdemeanors." On each such charge (in some of the cases the individual is accused of more than one misdemeanor) there is a possible maximum term of up to one year in prison. Of the six plaintiffs charged with such misdemeanors, four (Richardson, Pagan, Wilson and Simmons) are "adults" and two (Ratliff and Morton) are, respectively, 18 and 19 years old. Although the complaint says the latter two confront possible imprisonment for up to one year, plaintiffs' brief says these two, classified as "young adults," could be sent to reformatories for up to four years, and this (though it makes no difference for present purposes) would seem to be so

---

1. The New York County District Attorney has been permitted by stipulation to intervene as an additional party defendant.

under N.Y. Penal Law, Consol.Laws, c. 40, Art. 75.

The three remaining plaintiffs (Drysdale, Wing, and Collier) have sought and obtained permission to be tried as "youthful offenders." The sentencing alternatives available for a person adjudicated as a youthful offender include confinement in a reformatory for a period of up to four years. N.Y. Code Crim.Proc. § 913–m(1) (d) (McKinney Supp.1968); N.Y. Penal Law, Art. 75 (McKinney 1967).

As noted earlier, all of the plaintiffs have moved in the New York City Criminal Court, where they are all scheduled to be tried, for orders providing them with trial by jury, a procedure they say is required for their cases by the decision in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). That recent decision, all will recall, held applicable to the States, via the Fourteenth Amendment, the Sixth Amendment right to jury trial for "serious" as distinguished from "petty" offenses. The Court found it unnecessary there to "draw a line * * * separating petty from serious infractions" (pp. 160–161, 88 S.Ct. p. 1453), deeming it "sufficient" for the purposes before it "to hold that a crime punishable by two years in prison is * * * a serious crime and not a petty offense" (pp. 161–162, 88 S.Ct. p. 1454). Nothwithstanding the area thus seemingly left unresolved by the highest Court,[2] plaintiffs here say that *Duncan* "clearly" governs their cases, requiring that they be tried by jury and that the above-quoted New York statutes, purporting to bar such trials, be declared unconstitutional.

The rejection of that contention, and resultant denial of their motions, by the New York City Criminal Court would, of course, be appealable if and when any of the plaintiffs are convicted following trial without a jury. They urge, however, that the situation is an extraordinary one demanding intervention by the federal district court in what amounts to an interlocutory appeal from the adverse rulings of the state trial court. More precisely, plaintiffs contend that their cases are proper for a federal injunction against continuation of their state prosecutions because they will, in the absence of such relief, suffer irreparable injury for which there can be no adequate remedy at law. The specific allegations of the complaint in this respect are these:

*Par. IV:* "Each of the plaintiffs is without adequate remedy at law to preserve and enforce his right to trial by jury and each faces irreparable injury as a result thereof in that each plaintiff if convicted, and the members of their class, if convicted, may serve a greater sentence than may constitutionally be imposed without the right to trial by jury being available and each will lack adequate remedies at law to prevent this occurrence by means of appeal."

*Par. VIII:* "The plaintiffs are without adequate remedy at law because were they required to face trial without jury and then seek reversal on appeal if convicted, they could serve a greater period of imprisonment pending appeal than would be constitutionally permissible without trial by jury."

*Par. XI:* "Plaintiffs and the class they represent face irreparable injury because of the possible imprisonment to be faced pending appeal if they are convicted. Plaintiffs and the class they represent are without remedy at law to obtain a trial by jury in the Courts of the State of New York."

While the quoted assertions are made in three separate places in the complaint, they will be seen to amount to the same thing in each instance—that, in the language last quoted, plaintiffs "face irreparable injury because of the possible imprisonment * * * pending appeal

---

2. "This Court has not had occasion to state precisely where the line falls between punishments that can be considered 'petty' and those that cannot be." Dyke v. Tay-

lor Implement Co., 391 U.S. 216, 220, 88 S.Ct. 1472–1474, 20 L.Ed.2d 538 (1968).

if they are convicted." There are no allegations in the complaint of any other kind of possible irreparable injury faced by plaintiffs or people in their circumstances.[3] And there is no affidavit or other form of additional factual submission in support of the motion for a preliminary injunction.

In their brief, evidently to highlight the dimensions of possible injury in the form of "possible imprisonment * * * pending appeal if they are convicted," plaintiffs say (p. 7) "[i]t is interesting * * * that while *Duncan* was decided in May, 1968, at this date [January, 1969], nearly eight months later, there is still not a single case in the entire state of New York before the New York Court of Appeals which raises the relevant issues." If it may be "interesting" in some sense, it is, of course, not surprising that the period plaintiffs seem to find remarkably long should have failed to produce a responsive decision in the State's highest Court. More importantly, however, plaintiffs' point appeared to be in process of rapid disintegration at the very moment of submission. One Criminal Court Judge, on September 9, 1968, sustained plaintiffs' view of the federally guaranteed right to a jury trial. In a

species of review at the prosecutor's instance—i. e., a proceeding under N.Y. CPLR Art. 78 by the prosecutor against the Criminal Court Judge—that ruling was sustained (but its premises only partially sustained) by New York Supreme Court Justice Saul Streit. Hogan v. Rosenberg, 296 N.Y.S.2d 584 (Sup.Ct. 1968).[4]

The New York Court of Appeals, recognizing the State's interest in an early resolution of the problem, has set the appeal in that case for argument on January 22, 1969. Another decision on the same subject—by the Appellate Term, First Department, upholding a misdemeanor trial without a jury and one-year sentence, People v. Baldwin, Cal. No. 621, Jan. 7, 1969—is to be heard by the Court of Appeals on the same day.[5]

It is overwhelmingly probable, in short, that New York's Court of last resort will have decided the merits of plaintiffs' claims about as soon as we could— if we were entitled to do that. This means an equally prompt and potentially more comprehensive decision by a high Court which is not only sworn to uphold the Federal Constitution, but is equipped with knowledge and power we lack respecting the meaning and effect of the

---

3. As has been noted, all of the plaintiffs before us are free on bail or parole while they await trial. In a rather fleeting aside, they use a dependent clause to swell the ranks of the class they purport to represent, *viz.*: "Plaintiffs and the class they represent, *many members of which are presently imprisoned because of their inability to raise bail,* face imprisonment in violation of their right to due process of law by the acts of the defendants." (Complaint, par. XI, emphasis added.) But the plaintiffs, who are not in jail, tender nothing to suggest that they should be deemed adequately to represent people who are in jail and who may, on grounds the present plaintiffs do not adumbrate, be differently situated in material ways on that score.

We record, then, that plaintiffs are treated for present purposes as representing only themselves. Since we are dismissing their complaint before ruling under Fed. R.Civ.P. 23(c) (1) whether this is properly brought as a class action, the safe and adequate course is to treat it as *not*

being a class action so far as any absent people may possibly be affected.

4. Mr. Justice Streit, to summarize briefly his detailed opinion, concluded that (1) offenses punishable by no more than a year's imprisonment may, consistently with *Duncan*, be tried without a jury; (2) non-jury trials are probably permitted, too, for "youthful offenders," whose cases do not involve adjudications for "crimes"; but (3) "young adult" offenders, facing potential reformatory sentences of up to four years, must be given jury trials.

5. On January 10, 1969, Mr. Justice Starkey, for the Kings County Supreme Court, nullified (by injunction) an order of the Criminal Court for that County (Harry J. Donnelly, J.) which had, on the premise that *Duncan* required it, granted an application for jury trial in a misdemeanor case. People v. Petterson, 296 N.Y.S.2d 511 Sup.Ct.1969. We are advised that the defendant will appeal, but not quickly enough to be heard by January 22.

State's own statutes.[6] It means equally prompt access to the Supreme Court of the United States if the federal objections presented here should survive the State's swift and orderly disposition of its own criminal business.

We should not be understood to suggest that the plaintiffs before us would fare better if final state adjudications appeared less imminent. But it is fair to say, even if the inspiration is not found in logic, that the dismissal of plaintiffs' complaint seems peculiarly easy and inevitable in light of the pending state appeals.

## II.

Quite apart from the coincidental events in the state courts, and despite the evident substance of the issues they raise under Duncan v. Louisiana, supra, plaintiffs lack grounds for the extraordinary injunction they seek against further proceedings in their New York City Criminal Court cases. It is settled that such exceedingly rare intrusions upon the state criminal process are permissible only "in those exceptional cases" where the intervention is required "to prevent irreparable injury which is clear and imminent"—or, more precisely, where such "danger of irreparable injury" is "both great and immediate." Douglas v. City of Jeannette, 319 U.S. 157, 163, 164, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), and cases cited. That basic principle has been steadily reaffirmed down to the present moment. Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed.

138 (1951); Dombrowski v. Pfister, 380 U.S. 479, 485, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Zwickler v. Koota, 389 U.S. 241, 253, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Pugach v. Dollinger, 277 F.2d 739 (2d Cir. 1960), aff'd, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961); Zwickler v. Boll, 270 F.Supp. 131 (W.D.Wis. 1967), aff'd, 391 U.S. 353, 88 S.Ct. 1666, 20 L.Ed.2d 642 (1968). It is enough, without reaching other difficulties the plaintiffs confront,[7] to require dismissal of their complaint.

The very statement of what plaintiffs assert as a danger of "irreparable injury" demonstrates that they misconceive the relevant meaning of "injury" and, more certainly, that the dangers they foresee are in no apposite sense "great and immediate." They say they may be convicted (as may any defendant); they may be imprisoned pending appeal (as may some defendants, subject to the power of a Supreme Court Justice to decree otherwise); and they may serve untenably long sentences before they can achieve vindication of their asserted rights to jury trials. It is obvious, of course, that none of these *possibilities* is an "immediate" threat; for some or all the plaintiffs, none of these things may ever come to pass. Still more significantly, such possibilities exist in the case of every state criminal defendant who asserts some non-frivolous federal constitutional ground upon which the charge against him or his trial

---

6. It was suggested in argument as a possibility by no means fantastic that Class A misdemeanors (up to one year's imprisonment) charged against adults 21 and older may ultimately be held triable under *Duncan* without a jury whereas such charges against "young adults" (aged 16 through 20) will require a jury because they may be sent for up to four years to reformatories. Cite as Hogan v. Rosenberg, supra. The same effect, so far as the Federal Constitution speaks, might be achieved by holding that the reformatory option for young adults is no longer available in cases of misdemeanors. Such choices seem open to the State's tribunals,

but are not for us or even for the Supreme Court of the United States.

7. It is, for example, still an open question whether because they plead a claim for relief under 42 U.S.C. § 1983, plaintiffs surmount the obstacle of 28 U.S.C. § 2283, which says:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." See Dombrowski v. Pfister, supra, 380 U.S. at 484 n. 2, 85 S.Ct. 1116, 1119.

may prove invalid. And it is clear that the presence of such contingencies is insufficient ground for denying to the States their power to complete their good-faith criminal prosecutions, without interference from federal district courts, subject only to review by the Supreme Court on asserted federal questions. Cf. Stefanelli v. Minard, supra, 342 U.S. at 123–124, 72 S.Ct. 118.

There is no suggestion in this case of bad faith on the part of anyone connected with the state prosecutions. This, among other factors almost too obvious to mention, distinguishes the totally different subject of Dombrowski v. Pfister, supra, upon which plaintiffs rely. It is, of course, at least equally important that *Dombrowski*, unlike the instant case, involved a "chilling effect" upon First Amendment freedoms from the particular course of bad-faith prosecutions there under scrutiny. See, e. g., 380 U.S. at 483, 486–487, 489, 490–492, 85 S.Ct. 1116. Given that unique—and, thus far at least, uniquely confined—focus of *Dombrowski,* it hardly seems necessary to stress the further point that the suit there reviewed was begun when no state prosecutions were pending.

Although they make no claim of bad faith, the plaintiffs here seem to offer as a proposed counterpart the argument that their substantive position under Duncan v. Louisiana is so overwhelmingly right that no responsible judge could reject it despite the several state judges who have done that. Two basic things are wrong with this. First, as we have noted briefly but sufficiently, the questions left open in *Duncan* are, by that very token, not answerable with anything like the absolute certainty plaintiffs assert. Second, if the rightness of plaintiffs' views were indubitable, this would be a reason for leaving them with the state courts rather than entertaining their claims now for federal intervention. This is, of course, among the points most vividly and explicitly made by Douglas v. City of Jeannette, supra.

 A word, finally, about plaintiffs' prayer for declaratory as well as injunctive relief. In the circumstances of this case, it might be enough to say that the reasons precluding an injunction "inexorably require denial of * * * declaratory relief as well." Zwicker v. Boll, 270 F.Supp. 131, 136 (W.D.Wis. 1967), aff'd, 391 U.S. 353, 88 S.Ct. 1666, 20 L.Ed.2d 642 (1968). But we note anyhow the familiar learning that a "declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank, 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784 (1948), quoted in Public Affairs Press v. Rickover, 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). It is grounds for the denial of such relief that "the same issue is pending in litigation elsewhere." Abbott Laboratories v. Gardner, 387 U.S. 136, 155, 87 S.Ct. 1507, 1519, 18 L.Ed.2d 681 (1967); cf. Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1953). That general principle is *a fortiori* and compelling here; once it is held, as we hold, that there is no justification to enjoin the pending state criminal proceeding, the prayer for declaratory relief becomes either an academic exercise, cf. Lebowich v. O'Connor, 309 F.2d 111 (2d Cir. 1962); Williams v. Ball, 294 F.2d 94 (2d Cir. 1961), or in effect a fruitless restatement of the prayer for an injunction. Cf., e. g., Henderson v. Trailway Bus Company, 194 F.Supp. 423, 427–428 (E.D.Va.1961), aff'd, 374 U.S. 488, 83 S.Ct. 1875, 10 L.Ed.2d 1044 (1963). Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), does not seem to us to affect this conclusion. That was a case where (1) there was no pending state prosecution and (2) the plaintiffs had properly invoked the special principles applicable to state statutes attacked for overbreadth under the First and Fourteenth Amendments. Cf. Cameron v. Johnson, 390 U.S. 611, 618–620, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968), and id. at 622–623 (dissenting opinion).

The motion for a preliminary injunction is denied. The motions to dismiss are granted. Judgment will be entered dismissing the complaint.[8]

It is so ordered.

---

8. It has been apparent from the outset, and not seriously disputed by counsel for plaintiffs, that if the sole target of the suit were § 40 of the N.Y. City Criminal Court Act, this would not be a case for a three-judge court since that statute applies only in New York City. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967). It might also follow that for the six plaintiffs whose only complaint is against § 40, there is no occasion for their claims to be heard on the merits by this court. On the other hand, the three plaintiffs to be tried as "youthful offenders" do attack the statewide provision (Code Crim.Proc. § 913–h) denying them a jury trial as well as the provision barring such trials for everyone in the New York City Criminal Court. At least for these three, then, the entire case appears to be proper three-judge business. Cf. Sterling v. Constantin, 287 U.S. 378, 393–394 53 S.Ct. 190, 77 L.Ed. 375 (1932); Public Service Commission of Missouri v. Brashear Freight Lines, 312 U.S. 621, 625 n. 5, 61 S.Ct. 784, 87 L.Ed. 1083 (1941); Landry v. Daley, 288 F.Supp. 194, 198 (N.D.Ill.1968). And we have only a single lawsuit before us, now being dismissed on the ground (applicable to all plaintiffs alike) that there are, in advance of the merits, barriers to any injunctive or declaratory relief. In these circumstances, there could be no practical or doctrinal point at this stage in lopping off part of the case for reference back to the single district judge for separate dismissal by him on grounds identical to those being followed in this unanimous decision.