**Lonnie McLUCAS, Rose Marie Smith, Warren Kimbro, George Edwards, Plaintiffs-Appellants,**

v.

**Honorable Aaron J. PALMER, a Judge of the Superior Court of the State of Connecticut, Defendant-Appellee.**

No. 772, Docket 34604.

United States Court of Appeals, Second Circuit.

Argued May 14, 1970.

Decided May 21, 1970.

Certiorari Denied June 29, 1970.
See 90 S.Ct. 2271.

W. Paul Flynn, New Haven, Conn. (L. Scott Melville, Theodore I. Koskoff, Bridgeport, Conn., and Samuel Gruber, Stamford, Conn., of Counsel), for plaintiffs-appellants.

Arnold Markle, State's Atty., New Haven, Conn., for defendant-appellee.

Edward F. Kunin, Bridgeport, Conn. (Brief of an amicus curiae submitted by The Connecticut Civil Liberties Union).

Before FRIENDLY and KAUFMAN, Circuit Judges, and McLEAN, District Judge.[*]

PER CURIAM:

The plaintiffs in this action in the District Court for Connecticut were four of twelve defendants in state criminal proceedings pending in the Superior Court in the County of New Haven. The state court defendants are accused of serious crimes, including first degree murder and kidnapping resulting in death. The cases have attracted much attention because of defendants' membership in the Black Panther party. Asserting federal jurisdiction under 28 U. S.C. § 1343(3), plaintiffs sought injunctive and declaratory relief with respect to an "Order for Courthouse Procedure" made by defendant here, a judge of the Superior Court.[1] The order, among other things, prohibited the use of photographic, television or sound equipment in the courthouse or immediately adjacent grounds and the making of sketches in the courthouse; provided for a search for weapons of all persons other than counsel and law enforcement personnel seeking admission to the courtroom;[2] prohibited entry to the courtroom during a session save with the court's permission and exit therefrom during a session except in an emergency; enjoined all lawyers participating in the cases, their associates, investigators and employees from making statements for the purpose of publicity or likely to result in the disclosure of prejudicial matter; prohibited the county medical examiner, court officials and prospective witnesses and jurors from making extraju-

---

[*] Of the Southern District of New York, sitting by designation.

[1]. The order was initially made of the judge's own motion but was somewhat modified on a motion to vacate. Efforts to secure interlocutory review by the Supreme Court of Connecticut proved unsuccessful.

[2]. At oral argument the state's attorney said that he had never read this provision as including veniremen and agreed to join in an effort to have this clarified and also to arrange that searches for weapons shall take place outside the view of the veniremen.

dicial statements about the cases except in discussions with counsel; and enjoined demonstrations in the courthouse or within 500 feet of it.[3] Maintaining that the order deprived them of rights guaranteed by the Constitution, plaintiffs sought a temporary restraining order and the convocation of a three-judge court under 28 U.S.C. § 2281. On motion of the State's Attorney, the court dismissed the complaint for want of jurisdiction. Three of the four plaintiffs have appealed from the dismissal; the claim for the convocation of a three-judge court has not been pressed.

Taking note of the statute, 28 U.S.C. § 2283, forbidding injunctions "to stay proceedings in a State court except as expressly authorized by Act of Congress," and the question, yet unresolved by the Supreme Court, whether the Civil Rights Act, 42 U.S.C. § 1983, comes within the exception, Chief Judge Timbers placed his decision on what he regarded as the broader principle of Stefanelli v. Minard, 342 U.S. 117, 122–125, 72 S.Ct. 118, 96 L.Ed. 138 (1951). He read this as prohibiting federal interference with the administration of criminal justice by state courts save in the most exceptional circumstances. We have affirmed our view of the continued vitality of Stefanelli just this term, see Engelman v. Cahn, 2 Cir., 425 F.2d 954, cert. denied, 397 U.S. 1009, 90 S.Ct. 1238, 25 L.Ed.2d 422 (1970). We there rejected the argument, made in this case by the Connecticut Civil Liberties Union as amicus curiae, that Stefanelli and its descendant, Pugach v. Dollinger, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961), were designed simply to protect the now-overruled doctrines of Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), and Schwartz v. Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231 (1952), from backdoor attacks;

to the contrary, such strength as there was in plaintiffs' position in Stefanelli and Pugach lay in their then inability to succeed with their federal claims in the state courts and by Supreme Court review. We held that Stefanelli was designed rather to prevent the very sort of "flanking movement against the system of State courts by resort to the federal forum" which is here being attempted, and to require that claims of procedural error having constitutional dimensions be pursued, in the event of conviction, through the state hierarchy in the first instance. Only after the state process, with the possibility of direct review by the Supreme Court, has been completed and the case can be seen on the basis of actualities rather than predictions, may a federal district court intervene. The very decision, Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), so strongly relied upon by plaintiffs, was at pains to recognize "that federal interference with a State's good-faith administration of its criminal laws is peculiarly inconsistent with our federal framework," 380 U.S. at 484, 85 S.Ct. at 1120.[4]

This important rule of federalism cannot be circumvented by seeking a declaratory judgment in addition to or in lieu of an injunction. That has been squarely held with respect to the anti-injunction statute, 28 U.S.C. § 2283, H. J. Heinz Co. v. Owens, 189 F.2d 505 (9 Cir.), rehearing denied, 191 F.2d 257 (1951), cert. denied, 342 U.S. 905, 72 S.Ct. 294, 96 L.Ed. 677 (1952); Goss v. Illinois, 312 F.2d 257 (7 Cir. 1963), and the statute, 28 U.S.C. § 1341, forbidding federal injunctions against the collection of state taxes, Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). We can see no basis for taking a different position with respect to the rule of Stef-

---

3. We were advised that this has been modified to except the New Haven Green.

4. Plaintiffs lack standing to raise the issue of the alleged "chilling effect" of the order on demonstrations by others with respect to their trial. In any event we

fail to see how the order is vulnerable in this respect. See Cox v. Louisiana, 379 U.S. 559, 566–567, 581–584, 85 S.Ct. 476, 13 L.Ed.2d 487 (concurring and dissenting opinion of Mr. Justice Black) (1965).

*anelli.* A declaratory judgment would create the same opportunity as an injunction for delay and disruption of the state criminal proceeding and the same danger of having federal courts plunge themselves into the consideration of issues that may prove academic or at least may appear in a different light after trial. The problem in Zwickler v. Koota, 389 U.S. 241, 254, 88 S.Ct. 391, 19 L. Ed.2d 444 (1967), was quite different. No criminal proceeding was pending or threatened when the suit was begun; the plaintiff there was held entitled to seek a declaration of the unconstitutionality of a state statute of general application, alleged to infringe First Amendment rights. While a contrary result has been reached with respect to the statutes requiring the convening of a court of three judges, 28 U.S.C. §§ 2281 and 2282, Kennedy v. Mendoza-Martinez, 372 U.S. 144, 154–155, 83 S. Ct. 554, 9 L.Ed.2d 644 (1963); cf. Flemming v. Nestor, 363 U.S. 603, 606–607, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), those decisions rest on the fact that a declaratory judgment by a single district judge unaccompanied by an injunction leaves the government free to apply the statute to other persons pending review and thus does not have the paralyzing effect on a statewide or nationwide statutory scheme which was thought to require the presence of three judges, and, more generally, on the narrow construction historically given the three-judge court statutes. Here the objective of a declaratory judgment would be to annul an order of a state court in the only case in which it applies. If such a declaration were accepted, the district judge would have substituted his views for the state judge's on a matter where the latter bears the responsibility for an orderly trial; if the state judge declined to modify his order

pending review of the federal judgment, there would either be an unseemly conflict or, in many instances, a delay of the state criminal trial. Such consequences are just what *Stefanelli* meant to avoid. If the order of the Superior Court violates any of plaintiffs' rights, which we do not intimate, they will have ample remedies in the event of conviction through review by the Supreme Courts of Connecticut and of the United States, supplemented, if need be, by habeas corpus in the federal courts.[5]

Affirmed.

---

5. In light of the foregoing we have no occasion to consider whether the immunity of state judges from suits for damages under 42 U.S.C. § 1983 extends to actions for injunctions or declaratory judgments. For the view that it does not, see Law Students Civil Rights Research Council v. Wadmond, 299 F.Supp. 117, 123–124 (S.D.N.Y. 1969), probable jurisdiction noted, 396 U.S. 999, 90 S.Ct. 560, 24 L.Ed.2d 492 (1970).