Darryl RESPRESS, by his father and next friend, Horace Respress, on behalf of himself and all others similarly situated, Plaintiff,

v.

Vincent J. FERRARA, individually and as Judge of the New York City Family Court, and Florence M. Kelley, individually and as Administrative Judge of the New York City Family Court, Defendants.

No. 70 Civ. 4853.

United States District Court,
S. D. New York.

Jan. 14, 1971.

---

Marcia Lowry, New York City (John Dewitt Gregory, Community Action for Legal Services, Inc., New York City, of counsel), for plaintiff.

Charles A. LaTorella, Jr., Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of State of New York, New York City, of counsel), for defendants.

Before FRIENDLY, Circuit Judge, and McLEAN and LASKER, District Judges.

FRIENDLY, Circuit Judge:

In this action, wherein federal jurisdiction is predicated on 28 U.S.C. § 1343 (3) and (4), plaintiff seeks an injunction and a declaratory judgment with respect to a constitutional issue which has already been raised in his impending trial for delinquency in the Family Court of New York and can be appealed through the New York judicial hierarchy and then to the Supreme Court of the United States should the need arise. While recognizing the substantial character of the constitutional claim, we decline to interfere with the New York proceeding.

Plaintiff, a 15-year-old boy, is the subject of a proceeding originated under § 731 of the New York Family Court Act seeking to adjudicate him a juvenile delinquent on the ground that, while under the age of 16, he committed acts, to wit, armed robbery and possession of a deadly weapon, which would constitute crimes if done by an adult. Section 753 of the Family Court Act directs that, upon an adjudication of juvenile delinquency, the court shall make one of four dispositions: (1) suspending judgment; (2) continuing the proceeding and placing the child in its own home or in the custody of a suitable relative or other person, the commissioner of social services,

or an authorized agency such as a state training school or a youth opportunity center; (3) placing the child on probation; [1] or (4) "committing the respondent in accord with section seven hundred fifty-eight." Section 758(a) provides that commitment may be "to the care and custody of an institution suitable for the commitment of a delinquent child maintained by the state or any subdivision thereof, to a commissioner of public welfare, or to an authorized agency, subject to the further orders of the court." Plaintiff raises no constitutional challenge to the possible dispositions set forth thus far. However, and here is the nub of the case, § 758(b) provides that a male juvenile may be committed to the Elmira reception center if he is adjudicated delinquent for commission at age 15 of an act (like armed robbery) which if committed by an adult would be a class A or B felony.[2] This center, a medium security correctional facility administered by the State's Department of Correction, 7 N.Y.C.R.R. 100.75, functions as a way-station for the purpose of reception, classification and program planning. It may also be the final place of detention for those, including children just over 16 sentenced as youthful offenders under N.Y.Code Cr.Proc. § 913-m, for whom it is believed to be indicated, N.Y.Correction Law, McKinney's Consol.Laws, c. 43, § 71. On the other hand, a 15-year old committed to Elmira under § 758(b), like an older child or an adult, can be transferred to other institutions within the state penal system upon proper findings by the Commissioner of Correction, N.Y.Correction Law § 23, 7 N.Y.C.R.R. 150.1. No commitments under either subsection of § 758 may exceed three years.

Raising the narrow issue that commitment under § 758(b) would be unconstitutional in the absence of a jury trial,

plaintiff moved before Judge Ferrara in the Family Court to grant such a trial, a procedure which, although not usual in that court, is not expressly forbidden by the statute. The court denied the motion and the Appellate Division declined to grant leave for an interlocutory appeal, Family Court Act § 1112. Plaintiff thereupon filed this complaint seeking an injunction to restrain Judge Ferrara from adjudicating his delinquency without a jury trial or, if such a trial were not accorded, from committing him to Elmira under § 758(b). The complaint also sought a declaratory judgment that denial of a jury trial to a juvenile subject to possible commitment to Elmira was unconstitutional or alternatively that § 758(b) was unconstitutional insofar as it permitted commitment to Elmira without a jury trial.[3] Believing that the complaint raised substantial constitutional questions, Judge Lasker requested the convening of a three-judge court, as plaintiff had asked, and issued an order temporarily restraining the Family Court from trying plaintiff without a jury or, if he were so tried and adjudicated a delinquent, from committing him to a penal institution. The trial was postponed, and the State answered and moved to dismiss the complaint. At the argument before us, both sides agreed there were no factual issues and that we should dispose of the case as on final hearing.

Plaintiff's constitutional claim is by no means unimpressive. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), established that proceedings against juveniles in special courts are subject to at least some of the provisions of the Bill of Rights which the Court considers the Fourteenth Amendment to have imposed upon the states. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), held the Sixth Amendment's guarantee of jury trial "in

---

1. All these provisions contain maximum limits not material to the issue here raised.

2. There are other provisions, apparently less onerous, for females.

3. The complaint contained the usual allegations seeking to maintain the suit as a class action. In light of our holding we do not find it necessary to rule whether it was properly so brought, F.R. Civ.P. 23(c) (1).

all criminal prosecutions" to be a provision so imposed in a case where the punishment might have been up to two years imprisonment although in fact Duncan was sentenced to only 60 days in the parish prison. Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), vacated a conviction by a court of three judges where the maximum punishment was one year, and, as had already been intimated in *Duncan*, established a six month period of imprisonment as the constitutional dividing line. Plaintiff argues that, whatever may be the case with respect to other forms of detention authorized by § 753, commitment under § 758(b) to Elmira, an institution operated by the Department of Correction and the destination of many convicts who have been found guilty under procedures avowedly designed for the punishment of crime, constitutes criminal punishment and requires a jury trial, as prosecution of an adult for a crime entailing a maximum of three years imprisonment clearly would.[4] While there is no Supreme Court authority specifically endorsing this claim, there is also none against it. In DeBacker v. Brainard, 396 U.S. 28, 90 S.Ct. 163, 24 L.Ed.2d 148 (1969), the Court was able to avoid decision on the constitutional need for jury trial in juvenile delinquency proceedings. Two cases presenting the problem are on its docket for the present term, In re Burrus, cert. granted, 397 U.S. 1036, 90 S. Ct. 1379, 25 L.Ed.2d 647 (1970) and McKeiver v. Pennsylvania, probable jurisdiction noted and set for oral argument with In re Burrus, 399 U.S. 925, 90 S.Ct. 2271, 26 L.Ed.2d 791 (1970), although plaintiff's counsel tells us they are somewhat less persuasive for the juvenile than this case since, under the legislation there at issue, the juvenile could be placed only in institutions separate and distinct from the state prison system. The state cases are divided. See Hall, Kamisar, LaFave and Israel, Modern Criminal Procedure, 1349 (3d ed. 1969), and Matter of Daniel Richard D., 27 N.Y.2d 90, 313 N.Y.S.2d 704, 261 N.E.2d 627 (1970), appeal docketed, as No. 953, 39 U.S.L.W. 3215 (U.S. Nov. 9, 1970), discussed below.

We believe that considerations of federalism require us to leave the assertion of plaintiff's claim to his defense in the Family Court and, to the extent that need arises, an appeal through the New York judicial system and to the Supreme Court of the United States.

■ In opposing the grant of the relief here sought, the State relies in the first instance on the anti-injunction statute, 28 U.S.C. § 2283. This directs that "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Plaintiff does not deny that an order directing the Family Court not to conduct Respress' trial except in a manner it has already rejected is "an injunction to stay proceedings in a State court * * *." See Hill v. Martin, 296 U.S. 393, 403, 56 S.Ct. 278, 80 L.Ed. 293 (1935). Rather he argues, first, that § 2283 is not an absolute prohibition but a matter of "comity" and, second, that in any event, because of the general grant of equity jurisdiction in the Civil Rights Act, 42 U.S.C. § 1983, an injunction here is "expressly authorized by Act of Congress."

Plaintiff's argument that § 2283 simply enunciates a principle of "comity", see 1A Moore, Federal Practice ¶ 0.208 [3.–11] at 2313, ignores not only Justice Brandeis' reference to it as a "prohibition", see Hill v. Martin, *supra*, 296

---

4. Although plaintiff also advances various claims under the equal protection clause of the Fourteenth Amendment, these do not seem to advance matters significantly beyond the strong Sixth Amendment claim. In any event, they would not alter our disposition of the case.

U.S. at 403, 56 S.Ct. 278, and Justice Frankfurters' characterization of it as "a clear-cut prohibition qualified only by specifically defined exceptions," Amalgamated Clothing Workers of America v. Richman Bros., 348 U.S. 511, 516, 75 S.Ct. 452, 455, 99 L.Ed. 600 (1955), but the Supreme Court's recent explicit rejection of the "comity" view in Atlantic Coast Line R. R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 286–287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). The Court there adhered to *Amalgamated Clothing Workers* and held "that any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld."

It would be equally profitless to engage in long discussion over the controversy among the circuits on the issue whether the Civil Rights Act constitutes such an exception. Contrast Baines v. Danville, 337 F.2d 579 (4 Cir. 1964), cert. denied *sub nom.* Chase v. McCain, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d

702 (1965), and Goss v. Illinois, 312 F.2d 257 (7 Cir. 1963), with Cooper v. Hutchinson, 184 F.2d 119 (3 Cir. 1950); and Sheridan v. Garrison, 415 F.2d 699 (5 Cir. 1969), cert. denied, 396 U.S. 1040, 90 S.Ct. 685, 24 L.Ed.2d 685 (1970). Only the Supreme Court can settle this, and it has been in no hurry to do so. See Cameron v. Johnson, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715 (1965), 390 U.S. 611, 613 n. 3, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). Suffice it to say that, in the absence of any rulings binding upon us, we perceive no good answer to Professor David Currie's rhetorical question, "But by what stretch of the English language could it be argued that the Civil Rights Act 'expressly' authorizes injunctions against suits in state courts?" Federal Courts, Cases and Materials, 563 (1968). We should thus regard § 2283 as an insurmountable obstacle to so much of the complaint as seeks an injunction against the Family Court's proceeding without a jury trial.[5] Whether the alternative request for a declaratory judgment might stand differently under § 2283 is another matter,[6]

---

5. We are unable to accept plaintiff's rather faint suggestion that the three-judge court statute, 28 U.S.C. §§ 2281 and 2284, may also constitute an express authorization and thus be an exception to § 2283. This act, intended for the protection of the states, see Green v. Board of Elections of City of New York, 380 F.2d 445, 448–449 (2 Cir. 1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968), says that an injunction shall *not* be granted in certain circumstances by a single district judge; it does not say, and nothing in its history suggests it was intended to mean, that three judges can grant an injunction against proceedings in a state court prohibited to any "court of the United States."

6. In H. J. Heinz Co. v. Owens, 189 F.2d 505, 509 (9 Cir.), rehearing denied, 191 F.2d 257 (1951), cert. denied, 342 U.S. 905, 72 S.Ct. 294, 96 L.Ed. 677 (1952), Judge Hastie wrote that "this statute [§ 2283] and the policy underlying it afford sound basis for a judicial conclusion that the granting of such declaratory relief would constitute an abuse of

discretion. This line of reasoning has been adopted by the Supreme Court in disapproving a declaratory determination of the invalidity of a state tax where a federal statute and underlying policy prohibited enjoining enforcement of a state tax," citing Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). Judge Hastie's careful language should be followed in lieu of the writer's broader characterization of *Great Lakes*, and also of *Heinz*, in McLucas v. Palmer, 427 F.2d 239, 241 (2 Cir.), cert. denied, 399 U.S. 937, 90 S.Ct. 2271, 26 L.Ed.2d 808 (1970). The other case cited in the *McLucas* opinion with respect to the applicability of § 2283 to declaratory judgments, Goss v. Illinois, *supra*, 312 F.2d 257, did go to the full extent there stated, but without discussion. See also Cunningham v. A. J. Aberman, Inc., 252 F. Supp. 602 (W.D.Pa.1965), aff'd, 358 F. 2d 747 (3 Cir. 1966); Brooks v. Briley, 274 F.Supp. 538, 553 (M.D.Tenn.1967), aff'd, 391 U.S. 361, 88 S.Ct. 1671, 20 L. Ed.2d 647 (1968), and the cases there cited; Machesky v. Bizzell, 414 F.2d

which, for a reason shortly to be indicated, we find it unnecessary to decide.

■ Even if the Supreme Court should ultimately rule that actions to enforce rights protected by 42 U.S.C. § 1983 constitute an "express" congressional authorization to disregard the anti-injunction statute, 28 U.S.C. § 2283, plaintiff would still be confronted by the principle, enunciated with respect to a threatened criminal proceeding in Douglas v. City of Jeannette, 319 U.S. 157, 162–164, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), and later held to apply *a fortiori* to pending ones, Stefanelli v. Minard, 342 U.S. 117, 120–123, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Pugach v. Dollinger, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961); Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963), forbidding federal interference with state criminal prosecutions save on the most urgent showing of need. As recently as Cameron v. Johnson, *supra*, 390 U.S. at 618, 88 S.Ct. 1335, at 1339, a suit under the Civil Rights Act, the Court, referring back to Dombrowski v. Pfister, 380 U.S. 479, 483–485, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), recognized that "a showing of 'special circumstances' beyond the injury incidental to every proceeding brought lawfully and in good faith is requisite to a finding of irreparable injury sufficient to justify the extraordinary remedy of an injunction" against a state criminal proceeding. Another three-judge court in this district and the court of appeals for this circuit have held that, for reasons there explained the broad principle of *Stefanelli* and its progeny applies equally to an alternative request for declaratory relief. See Richardson v. Dudley, 295 F.Supp. 181, 186 (S.D.N.Y.1969); McLucas v. Palmer, 427 F.2d 239, 241–242 (2 Cir.), cert. denied, 399 U.S. 937, 90 S.Ct. 2271, 26 L.Ed.2d 808 (1970).[7] Plaintiff's ar-

gument that this doctrine is inapplicable since proceedings to determine delinquency under the Family Court Act are civil rather than criminal in nature, is singularly unpersuasive when his main constitutional claim rests on the assertion that he risks being subjected to what is essentially criminal punishment, thus drawing his case within the Sixth Amendment's guarantees with respect to "criminal prosecutions."

Turning to the issue whether plaintiff stands to suffer irreparable harm as a result of the pending Family Court proceeding, we first observe that the punishment about whose visitation he complains may never be inflicted at all. The allegations of delinquency may not be established, in which event the court will dismiss the petition, Family Court Act § 751. If an adjudication of delinquency is entered, the court may suspend judgment, continue the proceeding and place Respress under guardianship, or put him on probation. Even if the court should decide to commit him, it is not required to send him to the Elmira correctional facility under § 758(b) rather than to an institution authorized under § 758(a)—a disposition which he does not claim to be constitutionally objectionable in the absence of a jury trial.

However, if the worst should befall and the Family Court should commit Respress to Elmira under § 758(b), his right to press his constitutional claim before the New York courts is sedulously guarded. See Dombrowski v. Pfister, *supra*, 380 U.S. at 484–485, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). An appeal to the Appellate Division lies as of right, Family Court Act, § 1112. If he should fail there, he could take a further appeal as of right to the Court of Appeals under CPLR § 5601(b). Although dicta in Matter of Daniel Richard D., *supra*,

283, 286 (5 Cir. 1969); and Note, The Federal Anti-Injunction Statute and Declaratory Judgments in Constitutional Litigation, 83 Harv.L.Rev. 1870, 1871–86 (1970).

7. Both opinions demonstrated the inapplicability of Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), on which plaintiff relies, and nothing would be gained by repeating the discussion here.

27 N.Y.2d 90, 313 N.Y.S.2d 704, 261 N.E.2d 627 (1970), might be thought to indicate unlikelihood of success in that court, the issue here raised was not at all decided in that case. The amended charge in *Daniel Richard D.* was of a lesser offense not permitting commitment under § 758(b), and the juvenile had pleaded guilty, thus, in the majority's view, abandoning his constitutional arguments, 27 N.Y.2d at 96, 313 N.Y.S.2d 704, 261 N.E.2d 627. With all that, the decision was by a bare majority. Hence, we do not regard it as at all unlikely that, if the issue ever had to be presented, the Court of Appeals either would sustain Respress' constitutional claim or, perhaps, applying its doctrine of construing a statute to avoid constitutional doubts, see People v. Bell, 306 N.Y. 110, 114, 115 N.E.2d 821 (1953); Courtesy Sandwich Shop, Inc. v. Port of New York Authority, 12 N.Y.2d 379, 389, 240 N.Y. S.2d 1, 6, 190 N.E.2d 402, appeal dismissed, 375 U.S. 78, 84 S.Ct. 194, 11 L. Ed.2d 141 (1963), would read the Family Court Act to require a jury in cases where § 758(b) may be applicable unless there is a stipulation against commitment under that section—an approach scarcely open to us. Finally, if all should go as badly in the New York courts as plaintiff fears, there remains the Supreme Court review which proved so effective in Baldwin v. New York, *supra*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437.

Plaintiff's sole argument against this, and his only distinction of Judge Frankel's persuasive discussion in Richardson v. Dudley, *supra*, 295 F.Supp. at 185–186, is that there is no provision for bail pending appeal in Family Court proceedings and he might be unable to procure a stay of commitment to Elmira pending completion of judicial review. He does not deny there is ample *power* to stay. The Family Court judge may do this, Family Court Act, § 762; failing that, any judge of the Appellate Division to which the appeal is taken may grant a stay during the appeal to that court, § 1114(b). Pending further appeal within the New York hierarchy, either the Appellate Division or the Court of Appeals can grant a stay, CPLR § 5519(c). If plaintiff still requires relief when the New York courts have completed their work, a Justice of the Supreme Court can grant it. Supreme Court Rule 51.

Plaintiff's fear is rather that the power to stay would not be exercised. His counsel claims, and we accept her claim, that she has found no report of a stay of commitment under § 758(b). But it is one thing to refuse a stay of commitment to Elmira because of alleged error by the Family Court judge and another to refuse such a stay when, as we have here recognized, the juvenile raises a serious issue whether the Federal Constitution allows him to be so committed in the absence of a jury trial. We refuse to believe that New York judges would be unresponsive under such circumstances. If they should be, the doors of the federal court-house will still be open and plaintiff's case could be considered in the light of actualities rather than what we deem to be baseless fears of what would happen in an eventuality which, for a variety of reasons, may never occur.

The temporary restraining order is vacated and the complaint dismissed.